**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHLEY DESVARIEUX, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| AXIOM HOLDINGS, INC. and CURTIS RILEY, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff Ashley Desvarieux ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Axiom Holdings, Inc. ("Axiom" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Axiom securities between October 14, 2016 and June 19, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and its Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO") and Director, Curtis Riley ("Riley").

2.      Axiom Holdings, Inc. is an independent power producer and real estate developer that develops, builds, owns & operates power generation plants and hotels. Axiom continues to leverage its global partnerships with real estate owners and hydropower developers and expand its asset portfolio through acquisition and development of identified pipeline.

3.      Founded in 2013, the Company is headquartered in Tsim Sha Tsui, Hong Kong Axiom's securities trade over the counter ("OTC") under the ticker symbol "AIOM."

4.      On October 10, 2016, Axiom Holdings, Inc. entered into a Share Exchange Agreement (the "Agreement") with CJC Holdings, Ltd. (together with its subsidiaries, "CJC"), a Hong Kong corporation, and the two shareholders of CJC, Hu Dengyang and Yang Chuan (collectively, the "CJC Shareholders"). CJC, through its subsidiaries, operates and constructs hydropower electric generation stations located in China with two in operation, a third under construction and a fourth in the planning stage and slated for operation in 2019. In addition, CJC, through its subsidiaries, operates two hotels in China.

5.      Pursuant to the Agreement, Axiom was to acquire all of the issued and outstanding shares of CJC from the CJC Shareholders in exchange for the issuance to the CJC Shareholders of 200,000,000 shares of the Company's common stock.

2

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Axion lacked control over the merger process sufficient to ensure that the Agreement with CJC was would be completed; (ii) accordingly, the Agreement with CJC was never completed; (iii) the Company's issuance of shares to the CJC Shareholders was thus improper; and (iv) as a result of the foregoing, Axiom's public statements were materially false and misleading at all relevant times.

7.      On June 19, 2017, Axiom issued a press release disclosing that the Company had identified discrepancies related to prior news announcements in response to a subpoena from the U.S. Securities and Exchange Commission.  In the press release, Axiom stated, in part:

> HONG KONG, June 19, 2017 /PRNewswire/ -- Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on the extensive search of documents on CJC (Hong Kong) Limited, the Company makes the following statement:
>
> Curt Riley, CEO of Axiom Holdings, stated, "In response to an SEC subpoena, I have reviewed numerous documents and we have found the following issues related to prior news announcements:
>
> 1. Hu Deng Yang and Yang Chau (current major shareholders) are still the shareholders of CJC, instead of Axiom or Horizon (wholly owned subsidiary of Axiom) when they had already received 200 million shares of Axiom on 21 December 2016) through the Share Exchange Agreement.
>
> 2. Hu Deng Yang is the sole director of CJC as of November 2016 and Nankamalu, who resigned in November 2016 as the CEO of CJC, signed on the SEA Agreement on 21 December 2016, after her resignation on behalf of CJC.
>
> These discrepancies are being examined. The Company will further announce the developments and take remedial measures."

8.      On the next day, Axiom issued a second press release announcing it would rescind shares related to the CJC merger, stating in relevant part:

HONG KONG, June 20, 2017 /PRNewswire/ — Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on continued review of documents and post activities after a news release in December 2016 related to a Reverse Merger with CJC (Hong Kong) Limited, the Company makes the following statement:

"There were a number of contractors and 3rd party individuals involved in the Reverse Merger in December, 2016 with CJC Limited," stated Curt Riley, CEO & Board of Directors of Axiom Holding, Inc.  "Regardless of many documents provided to our company, it now appears the merger was never completed, therefore, I, as CEO and the sole Director, am now taking steps to rescind the shares that were issued to the CJC shareholders including major shareholders Hu Deng Yang, Yang Chau. Jeffrey Martin, and Rex Cheung and will be investigating if such shares were used or sold without completing such transaction.  Furthermore, Axiom will be seeking a Court Injunction to restrain such shares from being transferred until such investigation is completed and/or a Court hearing to have such shares rescinded.  Furthermore, the company is refusing attempts by such individuals to install new officers and board members of Axiom.  Axiom and I, individually, are working to gather the documentation and evidence in order to respond to the SEC subpoena to the best of our ability and protect the remaining shareholders of Axiom."

9.      On this news, Axiom's share price fell $0.44, or 37.93% over two trading days, to close at $0.72 on June 20, 2017.

10.     On June 20, the SEC issued an order announcing the temporary suspension of trading in Axiom securities, beginning on June 21, 2017 until July 5, 2017.  According to the order, the SEC suspended trading due to questions regarding: "(1) a possible undisclosed controlling person since at least August 2015, (2) the accuracy and adequacy of Axiom's disclosure of security ownership of certain beneficial owners of its stock in its annual report for the fiscal year ended December 31, 2016; (3) the accuracy and adequacy of Axiom's disclosures since at least October 2016 in its periodic, annual, and current reports, including its December 21, 2016 current report on Form 8- K and its annual report for the fiscal year ended December 31, 2016 on Form 10-K, concerning the closing or consummation of a share exchange agreement and its ownership of related new business operations; and (4) the accuracy of certain information conveyed in stock promotion materials since at least April 2016."

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

14.     Venue is properly laid in this Judicial District pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b).  The acts and conduct complained of herein occurred in substantial part in this Judicial District.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, acquired Axiom securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant Axiom is incorporated in Nevada.  The Company's principal executive offices are located at Room C, 15/F., Ritz Plaza, 122 Austin Road, Tsimshatsui, Kowloon, Hong Kong.

18.     Defendant Riley ("Riley") has served at all relevant times as the Company's CEO, CFO and Director.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Axiom is an independent power producer and real estate developer that develops, builds, owns & operates power generation plants and hotels. Axiom continues to leverage its global partnerships with real estate owners and hydropower developers and expand its asset portfolio through acquisition and development of identified pipeline.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on October 14, 2016, when Axiom filed a Current Report on Form 8-K with the SEC, announcing the Company's entry into a Share Exchange Agreement with CJC Holdings, Ltd.  Pursuant to the Agreement, Axiom agreed "to acquire all of the issued and outstanding shares of CJC from the CJC Shareholders in exchange for the issuance to the CJC Shareholders of 200,000,000 shares of the Company's common stock, par value $0.001 per share (the "Common Stock")."

21.     On November 9, 2016, Axiom filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").

22.     In the Q3 2016 10-Q, the Company stated, in relevant part:

Share Exchange Agreement

On October 10, 2016, the Company entered into a Share Exchange Agreement (the "Agreement") with CJC Holdings, Ltd., a Hong Kong corporation (together with its subsidiaries, "CJC") and the two shareholders of CJC, Hu Dengyang and Yang Chuan (the "CJC Shareholders"). CJC, through its subsidiaries, operates and constructs hydropower electric generation stations located in China with two in operation, a third under construction and a fourth in the planning stage and slated for operation in 2019. In addition, CJC, through its subsidiaries, operates

two hotels in China. A more general discussion of CJC's operations is included below.

Pursuant to the Agreement, the Company has agreed to acquire all of the issued and outstanding shares of CJC from the CJC Shareholders in exchange for the issuance to the CJC Shareholders of 200,000,000 shares of the Company's common stock, par value $0.001 per share (the "Common Stock").

In connection with the transactions contemplated under the Agreement, the Company will cancel 200,000,000 shares of its Common Stock currently outstanding prior to the closing of the transactions, and therefore the shares of Common Stock issued to the CJC Shareholders in the transactions pursuant to the Agreement will represent approximately 58.8% of the issued and outstanding shares of the Company's Common Stock at the closing of such transactions. As of October 10, 2016, the Company has 340,000,000 shares of Common stock issued and outstanding. The acquisition of the shares of CJC and the cancellation of the shares of Company's Common Stock as described herein, together with the other transactions described in the Agreement, are collectively referred to herein as the "Transactions." Upon completion of the closing of the Transactions, CJC will become a subsidiary of the Company.

Any party may terminate the Agreement if the closing of the Transactions does not occur by February 15, 2017 (unless such failure was due to a breach of the Agreement by such party). The Company's obligation to close is conditioned upon, among other items, (i) certain, limited customary representations and warranties of CJC and the CJC Shareholders remaining true and correct; (ii) CJC and the CJC Shareholders having complied in all material respects with all covenants and conditions required by the Agreement; (iii) no order of any governmental authority being in place which prohibits the Transactions; (iv) receipt of any consents or approvals required for the closing of the Transactions under any contracts, permits, trademarks or intangibles; (v) the completion by the Company, to its satisfaction in its sole discretion, of its due diligence investigation of CJC and its operations; (vi) CJC having provided the Company with certain financial statements and (vii) no material adverse effect having occurred with respect to CJC.

CJC and the CJC Shareholders' obligations to close are conditioned upon, among other items, (i) certain, limited customary representations and warranties of the Company remaining true and correct; (ii) the Company having complied in all material respects with all covenants and conditions required by the Agreement; (iii) no order of any governmental authority being in place which prohibits the Transactions; (iv) no more than 340,000,000 shares of Common Stock being outstanding; (v) the completion by counsel for the CJC Shareholders, to its satisfaction in its sole discretion, of its due diligence investigation of the Company; and (vi) no material adverse effect having occurred with respect to the Company.

23.     The Q3 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Riley, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On March 31, 2017, Axiom filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K"). For fiscal year 2016, Axiom reported a net loss of $1.02 million, or $0 per diluted share, on revenue of $2.23 million, compared to a net loss of $60,000, or $0 per diluted share, on revenue of $20,000 for fiscal year 2015.

25.     In the 2016 10-K, the Company stated, in part:

Acquisition of CJC (Hong Kong), Ltd.

On December 21, 2016, our wholly owned subsidiary Horizon completed the acquisition of 100% of the issued and outstanding shares of CJC and its subsidiaries in exchange for an aggregate of 200,00,000 shares of our common stock following the cancellation of 200,000,000 shares of our common stock. Upon completion of the closing, CJC became a wholly owned subsidiary of our company and the former shareholders of CJC as a group hold approximately 58.8% of our Common Stock. See Item 1. Business - Acquisition of CJC and its subsidiaries.

Following the completion of the acquisition of CJC, our business and operations are now those of CJC and its subsidiaries as discussed below. Prior to acquisition of CJC, we were a shell company. Following is information on the business and operations of CJC and its subsidiaries that operates within the Power Production Segment and the Hospitality Segment.

26.     The 2016 10-K contained signed certifications pursuant to SOX by Defendant Riley, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On May 15, 2017, Axiom filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017

(the "Q1 2017 10-Q"). For the quarter, Axiom reported a net loss of $640,000, or $0 per diluted share, on revenue of $450,000, compared to a net loss of $260,000, or $0 per diluted share, on revenue of $320,000 for the same period in the prior year.

28.     In the Q1 2017 10-Q, the Company stated, in part:

Acquisition of CJC Holdings, Ltd.

Pursuant to the terms of a Share Exchange Agreement dated October 10, 2016 and amended on December 21, 2016, the Company, Horizon Resources Co. Ltd., a Cayman Islands company and a wholly owned subsidiary of the Company ("Horizon") acquired all of the issued and outstanding capital stock (the "CJC Shares") of CJC Holdings, Ltd., a Hong Kong corporation (together with its subsidiaries, "CJC") through the exchange of 200,000,000 shares of the Company's common stock for the CJC Shares held by the two sole shareholders of CJC, Hu Dengyang and Yang Chuan (the "CJC Shareholders"). The acquisition of the CJC Shares was completed on December 21, 2016. Pursuant to terms of the Share Exchange Agreement and immediately prior to the completion of the acquisition of the CJC Shares, Low Tuan Lee, Lim Wei and Chua Seong cancelled an aggregate of 200,000,000 shares of our common stock. Upon completion of the closing, CJC became a subsidiary of our company and the CJC Shareholders as a group held approximately 58.8% of the Company's shares of Common Stock outstanding of approximately 340,000,000 shares giving effect to the issuance of the shares to acquire the CJC Shares and the share cancellation.

29.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendant Riley, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30.     The statements referenced in ¶¶ 20-29 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Axion lacked control over the merger process sufficient to ensure that the Agreement with CJC was would be completed; (ii) accordingly, the Agreement with CJC was never completed; (iii) the Company's issuance of shares to the CJC Shareholders was thus improper; and (iv) as a

result of the foregoing, Axiom's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

31.     On June 19, 2017, Axiom issued a press release disclosing that the Company had identified discrepancies related to prior news announcements in response to a subpoena from the U.S. Securities and Exchange Commission.  In the press release, Axiom stated, in part:

HONG KONG, June 19, 2017 /PRNewswire/ -- Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on the extensive search of documents on CJC (Hong Kong) Limited, the Company makes the following statement:

Curt Riley, CEO of Axiom Holdings, stated, "In response to an SEC subpoena, I have reviewed numerous documents and we have found the following issues related to prior news announcements:

1. Hu Deng Yang and Yang Chau (current major shareholders) are still the shareholders of CJC, instead of Axiom or Horizon (wholly owned subsidiary of Axiom) when they had already received 200 million shares of Axiom on 21 December 2016) through the Share Exchange Agreement.

2. Hu Deng Yang is the sole director of CJC as of November 2016 and Nankamalu, who resigned in November 2016 as the CEO of CJC, signed on the SEA Agreement on 21 December 2016, after her resignation on behalf of CJC.

These discrepancies are being examined. The Company will further announce the developments and take remedial measures."

32.     On the next day, Axiom issued a second press release announcing it would rescind shares related to CJC reverse merger, stating in relevant part:

HONG KONG, June 20, 2017 /PRNewswire/ — Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on continued review of documents and post activities after a news release in December 2016 related to a Reverse Merger with CJC (Hong Kong) Limited, the Company makes the following statement:

"There were a number of contractors and 3rd party individuals involved in the Reverse Merger in December, 2016 with CJC Limited," stated Curt Riley, CEO & Board of Directors of Axiom Holding, Inc.  "Regardless of many documents provided to our company, it now appears ***the merger was never completed***,

therefore, I, as CEO and the sole Director, am now taking steps to rescind the shares that were issued to the CJC shareholders including major shareholders Hu Deng Yang, Yang Chau. Jeffrey Martin, and Rex Cheung and will be investigating if such shares were used or sold without completing such transaction.  Furthermore, Axiom will be seeking a Court Injunction to restrain such shares from being transferred until such investigation is completed and/or a Court hearing to have such shares rescinded.  Furthermore, the company is refusing attempts by such individuals to install new officers and board members of Axiom.  Axiom and I, individually, are working to gather the documentation and evidence in order to respond to the SEC subpoena to the best of our ability and protect the remaining shareholders of Axiom."

33.     On this news, Axiom's share price fell $0.44, or 37.93% over two trading days, to close at $0.72 on June 20, 2017.

34.     On June 20, the SEC issued an order announcing the temporary suspension of trading in Axiom securities, beginning on June 21, 2017 until July 5, 2017.  According to the order, the SEC suspended trading due to questions regarding: "(1) a possible undisclosed controlling person since at least August 2015, (2) the accuracy and adequacy of Axiom's disclosure of security ownership of certain beneficial owners of its stock in its annual report for the fiscal year ended December 31, 2016; (3) the accuracy and adequacy of Axiom's disclosures since at least October 2016 in its periodic, annual, and current reports, including its December 21, 2016 current report on Form 8- K and its annual report for the fiscal year ended December 31, 2016 on Form 10-K, concerning the closing or consummation of a share exchange agreement and its ownership of related new business operations; and (4) the accuracy of certain information conveyed in stock promotion materials since at least April 2016."

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Axiom Securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Axiom Securities were actively traded on the OTCQB.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Axiom or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Axiom;

- whether Defendant Riley caused Axiom to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Axiom Securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

42.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Axiom Securities are traded in an efficient market;

- the Company's Securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTCQB and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's Securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Axiom Securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

14

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Axiom Securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Axiom Securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Axiom securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Axiom's finances and business prospects.

49.     By virtue of their positions at Axiom, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As a senior manager and/or director of Axiom, Defendant Riley had knowledge of the details of Axiom's internal affairs.

51.     Defendant Riley is liable both directly and indirectly for the wrongs complained of herein.  Because of his position of control and authority, Defendant Riley was able to and did, directly or indirectly, control the content of the statements of Axiom.  As an officers and/or director of a publicly-held company, Defendant Riley had a duty to disseminate timely, accurate, and truthful information with respect to Axiom's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Axiom Securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Axiom's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Axiom Securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

52.     During the Class Period, Axiom Securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares

of Axiom Securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Axiom Securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Axiom Securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Defendant Riley)**

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, Defendant Riley participated in the operation and management of Axiom, and conducted and participated, directly and indirectly, in the conduct of Axiom's business affairs.  Because of his senior position, he knew the adverse non-public information about Axiom's misstatement of income and expenses and false financial statements.

57.     As an officers and/or director of a publicly owned company, Defendant Riley had a duty to disseminate accurate and truthful information with respect to Axiom's financial condition and results of operations, and to correct promptly any public statements issued by Axiom which had become materially false or misleading.

58.     Because of his position of control and authority as a senior officer, Defendant Riley was able to, and did, control the contents of the various reports, press releases and public filings which Axiom disseminated in the marketplace during the Class Period concerning Axiom's results of operations.   Throughout the Class Period, Defendant Riley exercised his power and authority to cause Axiom to engage in the wrongful acts complained of herein. Defendant Riley, therefore, was a "controlling person" of Axiom within the meaning of Section 20(a) of the Exchange Act.   In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of Axiom Securities.

59.     By reason of the above conduct, Defendant Riley is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Axiom.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 22, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Ashley DesvARieuX_ , make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Axiom Holdings, Inc. ("Axiom" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Axiom securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Axiom securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Axiom securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___6-21-17___
              **(Date)**

___Ashley Desrivieus___
              **(Signature)**

___Ashley DesVARieux___
              **(Type or Print Name)**

**AXIOM HOLDINGS, INC. (AIOM)**                                    **Desvarieux, Ashley**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 3/20/2017 | Purchase | 500 | $1.5190 |
| 3/23/2017 | Purchase | 1,000 | $1.5400 |
| 3/27/2017 | Purchase | 1,500 | $1.5500 |
| 3/29/2017 | Purchase | 2,837 | $1.5300 |
| 3/29/2017 | Purchase | 1,100 | $1.5399 |
| 3/29/2017 | Purchase | 2,000 | $1.5400 |
| 4/4/2017 | Purchase | 1,063 | $1.4399 |
| 4/12/2017 | Purchase | 2,000 | $1.4000 |
| 5/11/2017 | Purchase | 3,000 | $1.4300 |
| 5/22/2017 | Purchase | 1,102 | $1.4300 |
| 5/22/2017 | Purchase | 1,898 | $1.4400 |
| 5/23/2017 | Purchase | 1,000 | $1.4500 |
| 5/23/2017 | Purchase | 100 | $1.4400 |
| 5/23/2017 | Purchase | 200 | $1.4399 |
| 5/23/2017 | Purchase | 700 | $1.4590 |
| 5/31/2017 | Purchase | 500 | $1.3399 |
| 6/2/2017 | Purchase | 3,025 | $1.3500 |
| 6/2/2017 | Purchase | 100 | $1.2999 |
| 6/2/2017 | Purchase | 100 | $1.2310 |
| 6/2/2017 | Purchase | 500 | $1.1800 |
| 6/2/2017 | Purchase | 4,000 | $1.1890 |
| 6/2/2017 | Purchase | 100 | $1.1870 |
| 6/6/2017 | Purchase | 3,110 | $1.0990 |
| 6/6/2017 | Purchase | 6,000 | $1.0800 |
| 6/6/2017 | Purchase | 200 | $1.0800 |
| 6/7/2017 | Purchase | 9,110 | $1.0600 |
| 6/7/2017 | Purchase | 100 | $1.0750 |
| 6/7/2017 | Purchase | 100 | $1.0790 |
| 6/8/2017 | Purchase | 1,850 | $1.0770 |
| 6/12/2017 | Purchase | 1,205 | $0.9720 |
| 6/12/2017 | Purchase | 1,913 | $0.9700 |
| 6/12/2017 | Purchase | 687 | $0.9720 |
| 6/13/2017 | Purchase | 500 | $0.9750 |
| 6/14/2017 | Purchase | 1,000 | $1.1500 |