**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHLEY DESVARIEUX, Individually and On Behalf of All Others Similarly Situated,<br><br>                                                  Plaintiff,<br><br>                    v.<br><br>AXIOM HOLDINGS, INC. and CURTIS RILEY,<br><br>                                                  Defendants. | No. 1:17-cv-04756 (LTS) (GWG)<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR LEAVE TO SERVE AXIOM HOLDINGS, INC. AT NEW ADDRESS AND TO EFFECT ALTERNATIVE SERVICE ON CURTIS RILEY**

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................. 2

Procedural History ............................................................................................................... 6

    A. Attempts to Serve Process on Defendant Axiom ................................................... 7

    B. Attempts to Serve Process on Defendant Curtis Riley ......................................... 8

Argument .............................................................................................................................. 9

Conclusion .......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*,
    168 F. Supp. 3d 1 (D.D.C. 2016) ................................................................................... 10, 11

*Ehrenfeld v. Salim a Bin Mahfouz*,
    No. 04 Civ. 9641, 2005 U.S. Dist. LEXIS 4741, 2005 WL 696769 (S.D.N.Y.
    Mar. 23, 2005) .......................................................................................................................11

*Freedom Watch, Inc. v. OPEC*,
    766 F.3d 74 (D.C. Cir. 2014) ............................................................................................. 2, 11

*FTC v. Pecon Software Ltd.*,
    No. 12 CIV. 7186 PAE, 2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013) ................................ 2, 12

*In re S. African Apartheid Litig.*,
    643 F. Supp. 2d 423 (S.D.N.Y. 2009) .....................................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    270 F.R.D. 535 (N.D. Cal. 2010) ...........................................................................................11

*Knit With v. Knitting Fever, Inc.*,
    Nos. 08-4221, 08-4775, 2010 U.S. Dist. LEXIS 129870, 2010 WL 4977944
    (E.D. Pa. Dec. 7, 2010) .........................................................................................................11

*Philip Morris USA Inc. v. Veles Ltd.*,
    No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, 2007 WL 725412
    (S.D.N.Y. Mar. 12, 2007) .........................................................................................................2

*Richmond Techs., Inc. v. Aumtech Bus. Solutions*,
    No. 11-2460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ..........................11

*Rio Props. Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ..................................................................................... 2, 10, 11

*Stream SICAV v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013) .....................................................................................10

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
    312 F.R.D. 329 (S.D.N.Y. 2015) ............................................................................................12

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007) .......................................................................................................9

*Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (S.D.N.Y. 2013) ............................................................................................11

**Statutes**

Nev. Rev. Stat. Ann. §14.020(1) ........................................................................................................7

**Treaties**

Hague Convention on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil or Commercial Matters,
    Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ..............................................................7, 10

**Rules**

Fed. R. Civ. P. 4 ................................................................................................................ *passim*

Nev. R. Civ. P. 4(e)(1) .........................................................................................................7

Pursuant to Federal Rule of Civil Procedure 4(m) and 4(f)(3), Lead Plaintiffs Brenda and Kerry Johnston, Phillip H. Rhodes Jr., and Shem Properties, Inc. submit this memorandum in support of their motion for leave to serve Defendant Axiom Holdings, Inc. ("Axiom" or the "Company") beyond Rule 4(m)'s presumptive 90-day limit at the address of its new registered agent and to serve Defendant Curtis Riley, currently residing abroad, via service on his U.S. counsel and at his last-known email address.

## INTRODUCTION

This is a securities fraud class action arising out of a botched reverse merger between Axiom and the Chinese power company CJC Holdings, Ltd ("CJC"). Axiom—a Nevada corporation headquartered in Hong Kong—was an independent power producer and real estate developer. Defendant Riley was the Company's CEO and CFO from October 10, 2016 through June 17, 2017. According to his U.S. counsel, Mr. Riley is currently somewhere in Eastern Europe.

Rule 4(m) provides that a court "must extend the time for service" beyond the presumptive 90-day limit if "the plaintiff shows good cause." Fed. R. Civ. P. 4(m). Here, Lead Plaintiffs have good cause for seeking to serve Axiom beyond the 90-day period. Axiom's registered agent in Nevada resigned without a replacement on December 4, 2017, soon after Lead Plaintiffs were appointed. When Lead Plaintiffs attempted to effect service at Axiom's last-known address in Hong Kong under the Hague Convention, they received an Affirmation of Non-Service stating that the Bailiff's assistant had attempted service but had been told that "the aforesaid address was a business centre and the above-named party for service was not operating thereat." However, on August 8, 2018, Plaintiffs' Counsel discovered that Axiom had a new registered agent in Nevada, which had only been appointed in late May 2018. Accordingly, Lead Plaintiffs now request leave to serve Axiom via its registered agent.

Lead Plaintiffs also seek leave under Rule 4(f)(3) to serve Mr. Riley via service on his U.S. counsel and his last known email address. Under Rule 4(f)(3), an individual outside the United States "may… be served… by other means not prohibited by international agreements, as the court orders." Fed. R. Civ. P. 4(f)(3). Rule 4(f)(3) is "neither a 'last resort' nor one of 'extraordinary means,' but is "merely one means among several which enables service of process on an international defendant."[1] Here, for many months, Lead Plaintiffs were unable to locate Mr. Riley. They engaged a process server and attempted to effect personal service at an address belonging to his father (who shares Mr. Riley's name) and at two other addresses, but without success.

Counsel representing Mr. Riley has now filed papers in this action stating that Mr. Riley is in Eastern Europe. (Dkt. No. 26.) However, his address and his country of residence are unknown. Accordingly, Lead Plaintiffs seek leave to serve Mr. Riley through his counsel and by email to his last-known email address. "[N]umerous courts… have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf."[2] This Court has also repeatedly approved service by email.[3]

## FACTUAL BACKGROUND

Axiom, an independent power producer and real estate developer, was incorporated in Nevada in 2013. As of August 1, 2017 (the date of its most recent SEC filing), its headquarters were Room C, 15/F, Ritz Plaza, 122 Austin Road, Tsim Sha Tsui, Kowloon K3, Hong Kong.

---

[1] *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002).

[2] *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 83 (D.C. Cir. 2014) (collecting cases).

[3] *See, e.g.*, *FTC v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (collecting cases); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (same).

On October 14, 2016, Axiom filed a Form 8-K announcing that it had entered into an agreement (the "Exchange Agreement") to acquire all outstanding shares of CJC, under which CJC shareholders would receive 200 million newly-issued Axiom shares, representing 58.8% of Axiom's equity. The Exchange Agreement was signed by "Ms. Nankalamu… Chief Executive Officer" on behalf of CJC. Axiom also announced in the same Form 8-K that, on October 10, 2016, it had appointed Defendant Curtis Riley as CEO and CFO of the Company.

On December 29, 2016, Axiom issued a press release announcing that the reverse merger had been completed. However, on June 19, 2017, Axiom issued a press release stating:

> **Axiom Holdings, Inc. Responds to SEC Subpoena and Updated Information**
>
> HONG KONG, June 19, 2017 /PRNewswire/—Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on the extensive search of documents on CJC (Hong Kong) Limited, the Company makes the following statement:
>
> Curt Riley, CEO of Axiom Holdings, stated, "In response to an SEC subpoena, I have reviewed numerous documents and we have found the following issues related to prior news announcements:
>
>> 1. Hu Deng Yang and Yang Chau (current major shareholders) are still the shareholders of CJC, instead of Axiom or Horizon (wholly owned subsidiary of Axiom) when they had already received 200 million shares of Axiom on 21 December 2016) through the Share Exchange Agreement.
>>
>> 2. Hu Deng Yang is the sole director of CJC as of November 2016 and ***Nankamalu, who resigned in November 2016 as the CEO of CJC, signed on the SEA Agreement on 21 December 2016, after her resignation on behalf of CJC***.
>
> These discrepancies are being examined. The Company will further announce the developments and take remedial measures."

Compl. ¶¶ 7, 31 (emphasis added). Then on June 20, 2017, Axiom issued a press release stating*:*

**Axiom Board & CEO is in the process of rescinding shares related to CJC reverse merger, and is seeking a Court Injunction to restrict such shares**

HONG KONG, June 20, 2017 /PRNewswire/—Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on continued review of documents and post activities after a news release in December 2016 related to a Reverse Merger with CJC (Hong Kong) Limited, the Company makes the following statement:

> "There were a number of contractors and 3rd party individuals involved in the Reverse Merger in December, 2016 with CJC Limited," stated Curt Riley, CEO & Board of Directors of Axiom Holding, Inc. "Regardless of many documents provided to our company, *it now appears the merger was never completed*, therefore, I, as CEO and the sole Director, am now taking steps to rescind the shares that were issued to the CJC shareholders including major shareholders Hu Deng Yang, Yang Chau. Jeffrey Martin, and Rex Cheung and will be investigating if such shares were used or sold without completing such transaction. Furthermore, Axiom will be seeking a Court Injunction to restrain such shares from being transferred until such investigation is completed and/or a Court hearing to have such shares rescinded. Furthermore, the company is refusing attempts by such individuals to install new officers and board members of Axiom. Axiom and I, individually, are working to gather the documentation and evidence in order to respond to the SEC subpoena to the best of our ability and protect the remaining shareholders of Axiom."

Compl. ¶¶ 8, 32 (emphasis added). The June 20, 2017 press release listed Defendant Riley's email address as curt.riley.axiom@gmail.com. Exhibit I.[4]

Later on June 20, 2017, the Company filed a Form 8-K stating in relevant part:

> On June 17, 2017, shareholders of Axiom Holdings, Inc. (the "Company") holding in excess of 65% of the issued and outstanding common stock of the Company appointed Yang Baigui as Chairman of the Board of Directors (the "Board") and Yang Yunyoug as a director of the Company. Following

---

[4] All exhibits referenced herein are attached to the Declaration of Murielle J. Steven Walsh, filed contemporaneously herewith.

{00290212;10 }                                 4

> their appointments to the Board, the Board appointed Yang Baigui as its Chief Executive Officer and President, appointed Yang Yunyong as its Chief Financial Officer, *removed Mr. Riley as a member of the Board and terminated him as the Company's Chief Executive Officer and Chief Financial Officer*.
>
> \* \* \*
>
> *Following the termination of Mr. Riley as the Company's Chief Executive Officer, Chief Financial Officer and Director on June 17, 2017, Mr. Riley issued unauthorized press releases on June 19, 2017 and June 20, 2017 that are untrue and retaliatory*. The Company believes that Mr. Riley issued these press releases to cause financial harm to the Company and its shareholders stemming from his unmet demands for compensation, among other things, leading up to his dismissal.
>
> The Company reaffirms that it completed the acquisition of CJC Holdings, Ltd. and its subsidiaries on December 21, 2016 as reported in the Company's Form 8-K as filed with the SEC on December 23, 2016. Furthermore, the Company denies any suggestion by Mr. Riley's false statements that it acted improperly based on a subpoena the SEC issued to the Company. The subpoena was issued in connection with an SEC investigation of another company that is not related to Axiom Holdings, Inc. The Company is in the process of assembling the requested documents and responding to the subpoena. The Company has also taken further steps to prevent Mr. Riley from improperly disseminating any further false and misleading information regarding the Company and is exploring all lawful means to address his prior actions.

Exhibit H (emphasis added).

Also on June 20, 2017, the SEC suspended trading in Axiom securities due to "(1) a possible undisclosed controlling person since at least August 2015, (2) the accuracy and adequacy of Axiom's disclosure of security ownership of certain beneficial owners of its stock in its annual report for the fiscal year ended December 31, 2016; (3) the accuracy and adequacy of Axiom's disclosures since at least October 2016 in its periodic, annual, and current reports… and (4) the

{00290212;10 }                                         5

accuracy of certain information conveyed in stock promotion materials since at least April 2016." Compl. ¶ 10.

The fallout for investors was immediate and dramatic. Over the next two trading days, Axiom's share price fell nearly 38%. Compl. ¶ 9. Subsequently, on August 1, 2017, the Company filed a Form 15-15D announcing that it was invoking Rule 12h-3(b)(1)(i), thereby suspending its obligation to file reports with the SEC.

## PROCEDURAL HISTORY

The Complaint, filed on June 22, 2017, alleges that, throughout the Class Period (October 14, 2016 through June 19, 2017), Defendants made materially false and/or misleading statements and/or failed to disclose, among other things, that:

- Ms. Nankalamu was not the Chief Executive Officer of CJC when the Exchange Agreement was executed;

- Ms. Nankalamu therefore had no authority to enter into the Exchange Agreement on behalf of CJC;

- Axiom lacked control over the merger process sufficient to ensure that the Exchange Agreement with CJC would be properly completed;

- The Exchange Agreement with CJC was never actually completed; and

- The Company's issuance of shares to the CJC Shareholders was thus improper.

Compl. ¶¶ 6, 30, 31.

On September 12, 2017, the Court appointed Brenda and Kerry Johnston, Phillip H. Rhodes Jr., and Shem Properties, Inc. as Co-Lead Plaintiffs, and Block & Leviton and Pomerantz as Co-Lead Counsel. (Dkt. No. 21.) On December 12, 2017, Plaintiffs filed their Motion for Class Certification in Advance of Entry of Default Judgment, with supporting papers (Dkt. Nos. 22–24).

### A. Attempts to Serve Process on Defendant Axiom

On August 21, 2017, a copy of the Complaint, Summons, and civil cover sheet were delivered via certified first-class mail to the Company's registered agent in Nevada: Corporate Direct, Inc., 2248 Meridian Blvd., Ste. H, Minden, NV 89423. (Dkt. No. 19; Exhibit A.[5])

In December 2017, Lead Plaintiffs tried to serve the Company via its registered agent, but Corporate Direct refused to accept the package. (Exhibit C.) Corporate Direct had resigned as Axiom's registered agent on December 4, 2017, and Axiom had no registered agent at all until May 23, 2018. (Exhibit B at 1, 3.[6])

Plaintiffs next attempted to effect proper service on Axiom through the Hong Kong Central Authority, pursuant to Article 5 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. On January 5, 2018, Plaintiffs formally requested that the Hong Kong Central Authority effect service of the Complaint, Summons, and various other filings (Dkt. Nos. 1, 2, 4–6, 19, 21–24) at the Company's most recent known address: Room C, 15 F, Ritz Plaza, 122 Austin Road, Tsim Sha Tsui Kowloon, Hong Kong, China. (Exhibit E.) On April 4, 2018, however, Plaintiffs received an Affirmation of Non-Service dated February 20, 2018 stating that the Bailiff's assistant had attempted service but had been told by "the occupier at the aforesaid address" that "the aforesaid address was a business centre and the above-named party for service was not operating thereat." (Exhibit F at 3.)

---

[5] While this likely did not constitute effective service under Rule 4, it helped apprise Defendants of the lawsuit filed against them.

[6] Plaintiffs also tried certified mail directly to Axiom's headquarters in Hong Kong. On December 19, 2017, a package containing the Complaint and Summons was delivered to Axiom's Legal Department. (Exhibit D.)

Finally, on August 8, 2018, Plaintiffs' Counsel discovered that the Company had a new registered agent in Nevada: Incorp Services, Inc., 3773 Howard Hughes Pkwy., Ste. 500s, Las Vegas, NV 89169-6014. (Exhibit B at 1.)

### B. Attempts to Serve Process on Defendant Curtis Riley

After Lead Plaintiffs were appointed, Lead Counsel engaged a process server and started investigating Defendant Riley's location. Lead Counsel's investigation determined that Defendant Riley's most likely addresses[7] were:

| 17837 Aguacate Way | 2215 Cedar Springs Rd., Apt. 1115 | 528 Towne House Ln. |
| San Diego, CA 92127-1060 | Dallas, TX 75201-1853 | Richardson, TX 75081-3528 |

On December 18, 2017, a process server engaged by Plaintiffs' Counsel attempted to serve Defendant Riley at 17837 Aguacate Way. A woman who described herself as Defendant Riley's stepmother stated that he lived in Europe but she did not know where. On January 4, 2018, the process server unsuccessfully tried to serve Defendant Riley at 2215 Cedar Springs Rd. and 528 Towne House Ln. (Exhibit G.) So on January 13, 2018, the process server returned to 17837 Aguacate Way and delivered the Complaint, Summons, and various other filings (Dkt. Nos. 1, 2, 4–6, 19, 21–24). On January 22, 2018, the process server mailed the same documents to Defendant Riley at 17837 Aguacate Way. (Dkt. No. 25.)

On March 22, 2018, Defendant Riley's counsel filed a pre-motion letter before Magistrate Judge Gorenstein regarding an anticipated motion to dismiss for insufficient service of process. (Dkt. No. 26.) According to that letter, Defendant Riley "currently resides in Eastern Europe";

---

[7] As of August 2017, the Nevada Secretary of State's website listed Defendant Riley's address as 11637 Orpington St., Orlando FL 32817. (Exhibit A.) However, Plaintiffs' Counsel's investigation found that although *Axiom* may have had some connection to that property, Defendant Riley did not reside there.

17837 Aguacate Way is "the residence of Mr. Riley's *father*, who happens to share Mr. Riley's first name"; and Defendant Riley stayed at the 17837 Aguacate Way residence "[f]or approximately four weeks in February 2017, between moving from Hong Kong and leaving for Eastern Europe." *Id.* The letter argues that he "never established any indicia of permanent residence at his father's home, and never provided any indication that he would be returning to that address." *Id.* On March 28, 2018, Magistrate Judge Gorenstein denied the pre-motion letter "without prejudice to a new application made to Judge Swain." (Dkt. No. 27.) As of today, Defendant Riley has made no such application before Judge Swain and has not made any other filing in this case.

## ARGUMENT

Rule 4(m) sets a presumptive 90-day limit to serve process, but a court "must extend the time for service… if the plaintiff shows good cause," and the 90-day limit "does not apply to service in a foreign country." Fed. R. Civ. P. 4(m).[8] Here, as set forth above, Lead Plaintiffs were not appointed until mid-September 2017, and the Company's registered agent in Nevada resigned in early December—with no replacement.[9] Lead Plaintiffs made good-faith efforts to serve the

---

[8] Even absent good cause, the Second Circuit has held that the 90-day limit should be extended if the plaintiff has a "colorable excuse for neglect." *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007).

[9] Under Nevada law, every corporation must "appoint and keep in this State a registered agent who resides or is located in this State," and "all legal process… may be served upon the registered agent listed as the registered agent of the entity in the records of the Secretary of State." Nev. Rev. Stat. Ann. §14.020(1). "Service of legal process…pursuant to this subsection is valid regardless of whether the status of the entity in the records of the Secretary of State is in default or is revoked." *Id.* §14.020(2). Federal law likewise provides for service on a corporation by delivering the summons and complaint to "any…agent authorized…by law to receive service of process." Fed. R. Civ. P. 4(e)(2); *accord* Nev. R. Civ. P. 4(e)(1).

Company abroad—which is not subject to Rule 4(m)'s 90-day limit—but were unsuccessful. However, Axiom recently appointed a registered agent in Nevada. Lead Plaintiffs have good cause for the delay and respectfully request leave to serve Axiom via its new registered agent.

The Court should also grant leave to serve Defendant Riley via his U.S. counsel and his last-known email address. Under Rule 4(f)(3), an individual may be served outside the United States by any of several enumerated means, including broadly "by other means not prohibited by international agreements, as the court orders." Fed. R. Civ. P. 4(f)(3).[10] Rule 4(f)(3) is "neither a 'last resort' nor one of 'extraordinary means,' but is "merely one means among several which enables service of process on an international defendant." *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Accordingly, "a plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013).

Other than being facially permitted by Rule 4(f)(3), a proposed method of service need only "be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio*, 284 F.3d at 1016-17 (citation omitted). "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id.* at 1016 (collecting cases). In particular, "numerous courts… have sanctioned service on United States counsel as an alternative

---

[10] The means of service requested herein are "not prohibited by international agreements" because the Hague Convention, by its terms, "shall not apply where the address of the person to be served with the document is not known." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art.1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163; *see generally Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 14 (D.D.C. 2016).

means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf." *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 83 (D.C. Cir. 2014) (collecting cases).[11]

Here, Plaintiffs have made numerous unsuccessful attempts to serve Defendant Riley at several possible addresses in the United States. According to his U.S. counsel, Defendant Riley "currently resides in Eastern Europe"—but his address and even his country of residence are unknown. Defendant Riley does, however, have U.S.-based counsel, as well as actual notice of this lawsuit. (*See* Dkt. No. 26). In virtually the same circumstances, courts have authorized service upon a foreign defendant via its U.S.-based counsel. *See Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (authorizing service on foreign defendant via U.S. counsel even though "counsel made only a special appearance in this case to contest service of process").

In ordering alternative means of service, a court "need only select one reliable mechanism." *In re S. African Apartheid Litig.,* 643 F. Supp. 2d 423, 437 (S.D.N.Y. 2009). However, serving

---

[11] *See also Rio*, 284 F.3d at 1016–17 ("expressly agree[ing] with the district court's… use of Rule 4(f)(3) to ensure the smooth functioning of our courts of law" by authorizing service on foreign entity by mail to its U.S. counsel and by email); *Bazarian*, 168 F. Supp. 3d at 14 (authorizing service via U.S. counsel where foreign defendants had "availed themselves of the U.S. legal system"); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-2460-LHK, 2011 U.S. Dist. LEXIS 71269, 44-46 (N.D. Cal. July 1, 2011) (authorizing service on foreign defendant's U.S.-based counsel, noting this "is a common form of service ordered under Rule 4(f)(3)"); *Knit With v. Knitting Fever, Inc.*, Nos. 08-4221, 08-4775, 2010 U.S. Dist. LEXIS 129870, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 538 (N.D. Cal. 2010); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641, 2005 U.S. Dist. LEXIS 4741, 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (authorizing service on foreign defendant's U.S. counsel where counsel was "in communication with Defendant in relation to the pending legal proceedings in the United States… and will know how to locate Defendant").

Defendant Riley at his last known email address (curt.riley.axiom@gmail.com, according to Axiom's June 20, 2017 press release) as well as via his U.S. counsel, can only increase the likelihood of reaching him. This Court has repeatedly approved service by email in similar situations.[12]

## CONCLUSION

For all these reasons, Lead Plaintiffs ask the Court enter an order giving Lead Plaintiffs to leave to serve Axiom at the address of its new registered agent and to serve Riley via his U.S. counsel: Paul Niehaus of Kirsch & Niehaus PLLC, 150 East 58th Street, 22nd Floor, New York, NY 10155 and via email to curt.riley.axiom@gmail.com.

Dated: August 16, 2018　　　　　　　　Respectfully submitted,

/s/ *Jeremy A. Lieberman*
POMERANTZ LLP
Jeremy A. Lieberman
Murielle J. Steven Walsh
Aatif Iqbal
600 Third Avenue, Floor 20
New York, New York 10016
(t) (212) 661-1100
(f) (917) 463-1044

/s/ *Jeffrey C. Block*
BLOCK & LEVITON LLP
Jeffrey C. Block
Jeff@blockesq.com
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(t) (617) 398-5600
(f) (617) 507-6020

*Attorneys for Lead Plaintiffs and the Putative Class*

---

[12] *See, e.g.*, *FTC v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where," as here, "a plaintiff demonstrates that the email is likely to reach the defendant.") (collecting cases); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015).