**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASHLEY DESVARIEUX, Individually and On Behalf of All Others Similarly Situated, | No. 1:17-cv-04756 |
| Plaintiff, | |
| v. | |
| AXIOM HOLDINGS, INC. and CURTIS RILEY, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IN ADVANCE OF ENTRY OF DEFAULT JUDGMENT**

{00290211;4 }

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................................... 1

II.    SUMMARY OF THE FACTS............................................................................................ 3

III.   PROCEDURAL HISTORY AND SUMMARY OF CLAIMS ........................................... 5

IV.   ARGUMENT ..................................................................................................................... 6

      A.     The Court Should Grant Class Certification Prior To Entering A Default Against
            Axiom ...................................................................................................................... 6

            1.     Rule 23(a) Is Satisfied............................................................................... 7

                     a.     Numerosity................................................................................... 8

                     b.     Commonality................................................................................. 9

                     c.     Typicality .................................................................................. 10

                     d.     Adequacy .................................................................................. 10

            2.     Rule 23(b) Is Satisfied ............................................................................ 11

                     a.     Common Questions of Law and Fact Predominate Over Individual
                           Questions..................................................................................... 11

                     b.     Plaintiffs And The Class Are Entitled To The Affiliated Ute
                           Presumption Of Reliance ............................................................ 12

                     c.     A Class Action Is Superior To All Other Available Methods Of
                           Adjudication................................................................................. 14

      B.     Lead Counsel Should Be Appointed As Class Counsel........................................ 15

CONCLUSION............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)................................................................3, 12, 13, 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................12

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
133 S. Ct. 1184 (2013)...........................................................7, 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).....................................................11

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)...................................................11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir.2007).......................................................14

*Costello v. BeavEx, Inc.*,
810 F.3d 1045 (7th Cir. 2016), cert. *denied*, 137 S. Ct. 2289 (2017) ......................................2

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ............................................12

*Davis v. Rodney*,
490 F.2d 1360 (3d Cir.1974)....................................................1

*Dietrich v. Bauer*,
192 F.R.D. 119 (S.D.N.Y. 2000) .............................................9

*Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I")*,
563 U.S. 804 (2011).................................................................12

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .............................................14

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990).....................................................7

*In re Charter Commc'ns Sec. Litig.*,
No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005).............................16

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ................................................................................................10

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    286 F.R.D. 226 (S.D.N.Y. 2012) ......................................................................................10

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ............................................................8, 10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................................15

*In re Orion Sec. Litig.*,
    No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...............................10

*In re Parmalat Sec. Litig.*,
    No. 04 MD 1653 (LAK), 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008) ...........................13

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................................9

*In re Sadia, S.A Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................................13, 14

*In re Scor Holding (Switz.) A.G. Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008) ..............................................................................15

*In re Smith Barney Transfer Agent Litig.*,
    290 F.R.D. 42 (S.D.N.Y. 2013) ..........................................................................................7

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    No. 3:09cv1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) .............................9

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) .............................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................................................8, 15

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ........................................................................................8

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ......................................................................................12

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir.1972) ............................................................................................10

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ...........................................................................15

*Louisiana Mun. Police Employees Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-CV-289, 2017 WL 3149424 (D. Vt. July 21, 2017) ....................................7

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)............................................................................................12, 13

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) ..........................................................................2, 7

*Mendez v. The Radec Corp.*,
    260 F.R.D. 38 (W.D.N.Y. 2009).............................................................................1

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010)............................................................................14

*Mihelis v. Network Commercial Serv., Inc.*,
    No. CV 11-2215 WFK ARL, 2014 WL 4828875 (E.D.N.Y. Aug. 8, 2014) ............................1

*Morrison v. National Australia Bank*,
    130 S.Ct. 2869 (2010)............................................................................................8

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..................................................................................11

*Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)...................................................................................8

*Stengle v. American Italian Pasta Co.*,
    No. 05-0725, 2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005)................................16

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) ...........................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)............................................................................................7

**Statutes**

15 U.S.C. § 78..........................................................................................................5, 7

**Rules**

Fed. R. Civ. P. 4........................................................................................................6

Fed. R. Civ. P. 23............................................................................................... *passim*

Lead Plaintiffs and Proposed Class Representatives Phillip H. Rhodes Jr. and Shem Properties, Inc. hereby submit this Memorandum in support of their motion for (1) class certification under Federal Rule of Civil Procedure 23, (2) appointment of Plaintiffs as Class Representatives, and (3) appointment of Pomerantz LLP as Class Counsel.

## I.       PRELIMINARY STATEMENT

This is a securities fraud class action in which Plaintiffs allege numerous material omissions concerning a botched reverse merger between Defendant Axiom Holdings, Inc. ("Axiom" or the "Company") and the Chinese power company CJC Holdings, Ltd ("CJC").

Despite being properly served, Axiom has failed to appear or respond in any way to the Class Action Complaint (the "Complaint"). ECF Nos. 43, 48, 51. Accordingly Plaintiffs – on behalf of themselves and other similarly situated Axiom investors who purchased or otherwise acquired Axiom shares during the Class Period[1] – intend to move the Court for an entry of default judgment against Axiom. Before doing so, however, Plaintiffs must first seek to certify the putative judgment Class. The so-called rule against one-way intervention "'bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment,' while only the named plaintiff would be bound by a judgment in favor of the defendant." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 44 (W.D.N.Y. 2009) (citation omitted). Simply put, "[r]elief cannot be granted to a class before an order has been entered determining that class treatment is proper." *Davis v. Rodney*, 490 F.2d 1360, 1366 (3d Cir.1974).[2]

---

[1] The "Class Period" is October 14, 2016 to June 19, 2017, inclusive.

[2] *See also Mihelis v. Network Commercial Serv., Inc.*, No. CV 11-2215 WFK ARL, 2014 WL 4828875, at *4 (E.D.N.Y. Aug. 8, 2014). As the Seventh Circuit recently noted, even simultaneous filing of class certification and a judgment comes "dangerously close to precluding

Plaintiffs will promptly move for default judgment should the Court grant this Motion, which seeks to certify the Class, thereby permitting the efficient and effective resolution of this action on behalf of Plaintiffs and thousands of other Axiom shareholders.[3]

The Second Circuit "has explicitly noted its preference for class certification in securities cases and the importance of such certification for small securities holders located throughout the country." *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (citations omitted). Certification should be granted if Plaintiffs can meet all four requirements of Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, and adequacy of representation), and also demonstrate that common issues of law or fact "predominate over any questions affecting only individual members" *See* Fed. R. Civ. P. 23(b)(3). Finally, Plaintiffs must show that a class action is "superior" to other methods of adjudication. *Id*.

Rule 23 is easily satisfied here. Axiom has 340 million outstanding shares. More than 6 million of those shares traded hands during the Class Period, indicating the existence of hundreds, if not thousands of Class members. Numerosity is therefore satisfied. So, too, is commonality. Virtually every question of law and fact raised in the Complaint are common to all Class members. Like other Class members, Plaintiffs purchased their Axiom shares at artificially inflated prices during the Class period due to Defendants' material omissions and misrepresentations. Their claims are, therefore, typical. Plaintiffs and their counsel are also more than adequate

---

review of the class certification decision." *Costello v. BeavEx, Inc*., 810 F.3d 1045, 1058 (7th Cir. 2016), cert. *denied*, 137 S. Ct. 2289 (2017).

[3] Plaintiffs' expert estimates damages of $1,896,500 based on the well-accepted single-trader damage calculation model and $1,819,250 based on the multi-trader model. Should the Court grant this Motion and Plaintiffs' forthcoming motion for entry of default judgment, Plaintiffs will submit a plan of allocation to the Court, which, of course, may be modified at the Court's discretion.

representatives. Nor are Plaintiffs' interests antagonistic to those of the Class and Plaintiffs' counsel are among the most experienced securities class action litigators in the country.

Rule 23(b)(3) is likewise satisfied. It is well-settled that the core issues of fact and law at issue here – *e.g.,* falsity, scienter, and materiality – predominate over any individual issues. Moreover, Plaintiffs easily demonstrate that they are entitled to the *Affiliated Ute* presumption of reliance because central to the Complaint are numerous material omissions.

Finally, a class action is far superior to any other method of adjudication. Hundreds – possibly thousands – of investors suffered damages as a result of the same fraudulent conduct engaged in by Defendants. It is highly unlikely that investors suffering small losses would bring suit individually. Further, there is no difficulty in maintaining this action as a class action. In fact, due to the sheer number of potential litigants, it is desirable to hear all claims here, in one court. Class certification should therefore be granted.

## II.   SUMMARY OF THE FACTS

Axiom is an independent power producer and real estate developer that develops, builds, owns, and operates power generation plants and hotels. Compl. ¶ 19.[4] On October 14, 2016 Axiom issued a press release reporting that it had entered into an agreement to acquire all the outstanding shares of CJC Holdings, Inc. ("CJC"), a which builds and operates hydroelectric power plants in China in exchange for 200,000,000 shares of Axiom's 340,000,000 – 58.8% of Axiom's equity (the "Exchange Agreement"). ¶¶ 4, 20.

---

[4] Citations to "Compl. ¶__" are to the Class Action Complaint filed in this action on June 22, 2017 (Dkt. No. 1). Similarly, reference to "Dkt." entries are to those made in this action.

The Exchange Agreement was signed by individual Defendant Curtis Riley on behalf of Axiom and a Ms. Nankalamu on behalf of CJC, purportedly as CJC's chief executive officer ("CEO"). ¶31. The Exchange Agreement purportedly closed on December 21, 2016. ¶20.

On June 19, 2017, Axiom issued a press release disclosing that the Company had identified discrepancies related to prior news announcements in response to a subpoena from the U.S. Securities and Exchange Commission. In the press release, Axiom stated, in part:

> HONG KONG, June 19, 2017 /PRNewswire/ -- Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on the extensive search of documents on CJC (Hong Kong) Limited, the Company makes the following statement:
>
> Curt Riley, CEO of Axiom Holdings, stated, "In response to an SEC subpoena, I have reviewed numerous documents and we have found the following issues related to prior news announcements:
>
> 1. Hu Deng Yang and Yang Chau (current major shareholders) are still the shareholders of CJC, instead of Axiom or Horizon (wholly owned subsidiary of Axiom) when they had already received 200 million shares of Axiom on 21 December 2016) through the Share Exchange Agreement.
>
> 2. Hu Deng Yang is the sole director of CJC as of November 2016 and Nankamalu, who resigned in November 2016 as the CEO of CJC, signed on the SEA Agreement on 21 December 2016, after her resignation on behalf of CJC.
>
> These discrepancies are being examined. The Company will further announce the developments and take remedial measures."

¶¶ 7, 31.

On June 20, 2017, Axiom issued a press release, and filed the same on Form 8-K with the SEC, informing investors that the Exchange Agreement was never completed and that it would rescind the shares issued to purchase CJC:

> HONG KONG, June 20, 2017 /PRNewswire/ — Axiom Holdings, Inc., (OTCQB: AIOM), a Nevada corporation, announced today, based on continued review of documents and post activities after a news release in December 2016 related to a Reverse Merger with CJC (Hong Kong) Limited, the Company makes the following statement:

"There were a number of contractors and 3rd party individuals involved in the Reverse Merger in December, 2016 with CJC Limited," stated Curt Riley, CEO & Board of Directors of Axiom Holding, Inc. "Regardless of many documents provided to our company, it now appears the merger was never completed, therefore, I, as CEO and the sole Director, am now taking steps to rescind the shares that were issued to the CJC shareholders including major shareholders Hu Deng Yang, Yang Chau, Jeffrey Martin, and Rex Cheung and will be investigating if such shares were used or sold without completing such transaction. Furthermore, Axiom will be seeking a Court Injunction to restrain such shares from being transferred until such investigation is completed and/or a Court hearing to have such shares rescinded. Furthermore, the company is refusing attempts by such individuals to install new officers and board members of Axiom. Axiom and I, individually, are working to gather the documentation and evidence in order to respond to the SEC subpoena to the best of our ability and protect the remaining shareholders of Axiom."

¶¶ 8, 32.

The same day, the SEC issued an order announcing the temporary suspension of trading in Axiom securities, beginning on June 21, 2017 until July 5, 2017, due to "(1) a possible undisclosed controlling person since at least August 2015, (2) the accuracy and adequacy of Axiom's disclosure of security ownership of certain beneficial owners of its stock in its annual report for the fiscal year ended December 31, 2016; (3) the accuracy and adequacy of Axiom's disclosures since at least October 2016 in its periodic, annual, and current reports… and (4) the accuracy of certain information conveyed in stock promotion materials since at least April 2016." ¶ 10.

The fallout for investors was immediate and dramatic. Over the next two trading days, Axiom's share price fell nearly 38%. ¶ 9.

## III.    PROCEDURAL HISTORY AND SUMMARY OF CLAIMS

This securities fraud class action followed on June 22, 2017. The Complaint alleges that Defendants Curtis Riley and Axiom violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated

thereunder (17 C.F.R. §240.10b-5). Specifically, Plaintiffs allege that throughout the Class Period,

Defendants made numerous material omissions, including that:

- Ms. Nankalamu was not the Chief Executive Officer of CJC at the time the Exchange Agreement was entered into. Compl. ¶¶6, 30, 31;

- Ms. Nankalamu had no authority to enter into the Exchange Agreement on behalf of CJC. *Id*;

- Axiom lacked control over the merger process sufficient to ensure that the Exchange Agreement with CJC would be properly completed. *Id.*, at ¶¶6, 30;

- The Exchange Agreement with CJC was never actually completed. *Id.*

The Class is defined as "all those who purchased or otherwise acquired Axiom Securities

during the Class Period… and were damaged upon the revelation of the alleged corrective

disclosures." ¶ 36.[5] On September 12, 2017 the Court appointed the Johnstons and Rhodes and

Shem as Co-Lead Plaintiffs in this litigation. Dkt. No. 21. In the same order, the Court also

appointed Block & Leviton and Pomerantz as Co-Lead Counsel. *Id.*

Defendants Axiom and Riley were served in accordance with Rule 4 and the Court's orders.

*See* ECF Nos. 43, 48, 51. To date, Axiom has failed to respond to the Complaint in any way

whatsoever.

## IV.    ARGUMENT

### A.    The Court Should Grant Class Certification Prior To Entering A Default Against Axiom

The Second Circuit has "explicitly noted its preference for class certification in securities

cases and the importance of such certification for small securities holders located throughout the

---

[5] "Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest." Compl. ¶36.

country." *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993); *see also Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 205 (S.D.N.Y. 2012). Like those involved here, "claims alleging violations of Section[ ] 10(b) ... of the Exchange Act are especially amenable to class certification," *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 (S.D.N.Y. 2013) (internal quotation marks omitted).

Certification of a class pursuant to Fed R. Civ. P. 23 is proper where, after undertaking a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Court determines that Plaintiff has demonstrated compliance with all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Louisiana Mun. Police Employees Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2017 WL 3149424, at *2 (D. Vt. July 21, 2017). And while a Rule 23 inquiry may, to some extent, overlap with the underlying merits, the Court should not "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013).

"In light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990).

### 1.      Rule 23(a) Is Satisfied

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed R. Civ. P. 23(a).

Here, all four requisites of Rule 23(a) are met.

### a.    Numerosity

Generally, if a class includes more than forty members, it is presumed that joinder would be impractical and that numerosity is satisfied. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members.").

"[I]n securities fraud class actions…. the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (collecting cases) (citation omitted); *see also In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015) (same). The precise number of class members need not be known, "so long as the contours of the class are ascertainable by reference to objective criteria." *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 (S.D.N.Y. 2013).

As set out in the Complaint, Axiom has, as of May 2017, 340,000,000 shares of common stock outstanding. Compl. ¶28. Lead Plaintiffs – like many other putative Class members – purchased their shares domestically, thereby satisfying the domesticity requirement of *Morrison v. National Australia Bank*, 130 S.Ct. 2869 (2010).

And while Lead Plaintiffs are presently unable to determine the exact number of potential Judgment Class members, they believe based upon the enormous number of outstanding shares that many hundreds, if not thousands, of domestic purchasers are dispersed throughout the United States. Notably, the precise number and identity of the members of the potential Judgment Class would be easily ascertainable from Defendants' corporate records. But because they have failed to appear, this information is simply not available.

### b.      Commonality

Rule 23(a)(2) requires a showing that common issues of law or fact predominate throughout the class. Courts in this Circuit have applied the commonality requirement "permissively… in the context of securities fraud litigation." *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000); *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995) (commonality a "'low hurdle'" that is "'easily surmounted'"). Indeed, in securities fraud cases like this, "where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09cv1293 (VLB), 2012 WL 3589610, at *10 (D. Conn. Aug. 20, 2012).

Here, because every Class member was allegedly harmed by the same misrepresentations and omissions, there are numerous issues common amongst them, including:

- Whether the federal securities laws were violated by Defendants' misrepresentations and omissions, as alleged in the Complaint;

- Whether statements and/or omissions made by Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, operations and management of Axiom;

- Whether Defendant Riley caused Axiom to issue false and misleading financial statements during the Class Period;

- Whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- Whether the prices of Axiom Securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- Whether the members of the Judgment Class have sustained damages and, if so, what is the proper measure of damages.

Commonality "is 'plainly satisfied' in a securities case where 'the alleged misrepresentations …. relate to all the investors, [because the] existence and materiality of such

misrepresentations obviously present important common issues.'" *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (quoting *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir.1972)). Here, each of the unresolved questions set out above focuses on Defendants' conduct as it relates to each member of the Class. Commonality is therefore satisfied.

### c.    Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of those of the class. Like commonality, the typicality inquiry is "not demanding." *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *3. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Further, plaintiffs need not show that their claims are *identical* to absent class members' claims. *In re Orion Sec. Litig.,* No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal citations omitted).

When "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met[.]" Here, the same conduct alleged of in the Complaint was suffered by Plaintiffs and each member of the absent Class. Compl., ¶38. Plaintiffs' claims are therefore typical of the Class.

### d.    Adequacy

Rule 23(a)(4) requires that Plaintiffs demonstrate they will "fairly and adequately protect the interests of the class." Generally, "adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's

attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs here unquestionably satisfy the adequacy requirement. Plaintiffs are aware of no interest whatsoever antagonistic to those of the Class. Further, Plaintiffs have already demonstrated a significant interest in prosecuting this action. To date, Plaintiffs have They have: (1) executed certifications detailing their Class Period transactions and expressing their willingness to serve as class representatives; (2) moved this Court to be appointed Lead Plaintiffs; (3) determined to work collaboratively as Co-Lead Plaintiffs; and (4) retained competent and experienced counsel who have significant experience in litigating complex securities actions like this; and (5) have moved the Court here for class certification with the intention of later moving for default judgment on behalf of the Class. Accordingly, Lead Plaintiffs are adequate and should be appointed as Class Representatives.

### 2.    Rule 23(b) Is Satisfied

Plaintiffs seek certification under Rule 23(b)(3), which requires "show[ing] that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting Fed R. Civ. P. 23(b)(3)). Plaintiffs satisfy those requirements here.

### a.    Common Questions of Law and Fact Predominate Over Individual Questions

"[T]he predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). Rule 23(b)(3) "does not require a plaintiff seeking class certification

to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196. Moreover, "[t]he predominance test is readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, common issues predominate over any individual issues. To recover for their claims under Section 10(b) and Rule 10b-5, Plaintiffs must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

It is well-settled that "[t]he proof for the claims of misrepresentation or omission, materiality, and [Defendant's] scienter are all based on a common nucleus of facts and a common course of conduct." *Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 127 (S.D.N.Y. 2001). Thus, the predominance inquiry "turns on the element of reliance." *Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I")*, 563 U.S. 804, 810 (2011).

> **b.      Plaintiffs And The Class Are Entitled To The Affiliated Ute Presumption Of Reliance**

In cases like this, "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Instead, all that Plaintiffs need show is that the "facts withheld be material in the sense that a reasonable investor might have considered them important in making [their] decision." *Id.*, at 153–54. "Reliance is presumed if the omission or non-disclosure is material." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 298 (S.D.N.Y. 2003).

The materiality standard is satisfied where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having

significantly altered the total mix of information made available." *Matrixx Initiatives*, 131 S. Ct.

at 1318 (citation and internal quotations omitted); *see also In re Sadia, S.A Sec. Litig*., 269 F.R.D.

298, 308 (S.D.N.Y. 2010) (material facts include those "which may affect the desire of investors

to buy, sell, or hold the company's securities").

Here, the Complaint alleges several material omissions triggering the *Affiliated Ute*

presumption, including that:

- Ms. Nankalamu, who signed the Exchange Agreement on behalf of CJC, was not the Chief Executive Officer of CJC at the time the Exchange Agreement was entered into. Compl. ¶¶6, 30, 31;

- Ms. Nankalamu had no authority to enter into the Exchange Agreement on behalf of CJC. *Id*;

- Axiom lacked control over the merger process sufficient to ensure that the Exchange Agreement with CJC would be properly completed. *Id.*, at ¶¶6, 30;

- The Exchange Agreement with CJC was never actually completed. *Id.*

These omissions relate to a transaction that would give away majority control of the

Company; and, therefore, to its overall financial condition. It is beyond dispute that these

omissions would have been material to Axiom shareholders. *See, e.g., In re Parmalat Sec. Litig*.,

No. 04 MD 1653 (LAK), 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008) (applying the

*Affiliated Ute* presumption where defendants "fail[ed] to disclose material facts that made the

reporting of certain information and transactions…. misleading.").

The *Affiliated Ute* presumption applies in this Circuit even where, like here, the Complaint

alleges some misrepresentations in addition to the omissions identified above. As one court of this

District explained:

[W]here plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption. Indeed, the theory behind the *Affiliated Ute* presumption—that, when material information is concealed, plaintiffs should only

have to prove that "a reasonable investor might have considered the omitted facts important in the making of [her] investment decision"—is not undermined simply because a defendant makes misstatements at the same time it omits material information.

*Fogarazzao v. Lehman Bros*., 232 F.R.D. 176, 186 (S.D.N.Y. 2005); *see also In re Sadia, S.A.*, 269 F.R.D. at 316 (applying *Affiliated Ute* presumption in "mixed" case involving misrepresentations and omissions).

It is beyond dispute that investors would have wanted to know that the purported CEO of CJC did not actually have authority to enter into the Exchange Agreement and that Axiom lacked the controls necessary to ensure the Exchange Agreement – which purported to give away more than half of the equity of Axiom – was consummated appropriately. The *Affiliated Ute* presumption of reliance accordingly applies.

### c.   A Class Action Is Superior To All Other Available Methods Of Adjudication

Rule 23(b) also requires that the Court find a class action superior to other methods of adjudicating the claims at issue in this case. "Together with predominance, the superiority requirement 'ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 99 (D. Conn. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 104 (2d Cir.2007)).

Rule 23(b) provides four factors relevant to a superiority analysis:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties to be encountered in managing a class action.

Fed. R. Civ. P. 23 (b)(3).

Superiority is met if "in terms of fairness and efficiency," the Court finds that the advantages of a class action are greater than those of "alternative available methods of adjudication." *In re Vivendi*, 242 F.R.D. at 91. As one Court in this District observed:

> In general, securities suits ... easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws ... inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008).

Here, the Rule 23(b)(3) superiority factors are easily satisfied. Because there are 340 million shares outstanding and more than 6 million shares changed hands throughout the Class Period, there are hundreds, if not thousands of Class members. "Litigating each case separately would be wasteful, and result in delay and an inefficient expenditure of judicial resources." *In re Scor Holding (Switz.) A.G. Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). And while "the number of potential plaintiffs is high, . . . the amount of potential recovery per plaintiff is not so high as to ensure that each plaintiff could or would bring an action individually." *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 187 (S.D.N.Y. 2008). Nor do any foreseeable manageability issues exist. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (noting that denial of class certification on manageability grounds is "disfavored").

### B.   Lead Counsel Should Be Appointed As Class Counsel

Under Rule 23(g), a court must appoint class counsel when certifying a class. That rule provides the Court with four factors to assess the appropriateness of class counsel, which include:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation,

and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Rule 23(g)(1)(A). Lead Counsel easily satisfy these criteria and should be appointed Class Counsel. Although in its early stages, Lead Counsel have already demonstrated their adequacy by investigating and filing this action, seeking class certification, and (soon) default judgment against Axiom on behalf of the Class.

Moreover, Lead Counsel are among the most experienced securities litigators in the country. Pomerantz has been litigating securities fraud cases for eighty years. It is no surprise that courts routinely acknowledge the strength of Pomerantz's securities litigation expertise. For instance, in *Stengle v. American Italian Pasta Co*., the court appointed Pomerantz as Lead Counsel, remarking that the firm: "has significant experience (and has been extremely effective) litigating securities class actions, employs several highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests." No. 05-0725, 2005 U.S. Dist. LEXIS 43816, at *27 (W.D. Mo. Dec. 19, 2005). Similarly, in *In re Charter Commc'ns Sec. Litig*, where Pomerantz served as sole lead counsel, the district court commended Pomerantz for obtaining "an excellent result" and praised the "vigor" with which it had prosecuted the case. No. MDL 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005).

Lead Counsel have the resources to devote to this case, including vigorously pursuing all available resources of Axiom should default judgment be entered against it. Accordingly, Pomerantz should be appointed as Class Counsel.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order certifying the Class, appointing Lead Plaintiffs as Class Representatives, and appointing Pomerantz as Class Counsel.

Dated: June 28, 2019                    Respectfully submitted,

                                        /s/ Murielle J. Steven Walsh
                                        POMERANTZ LLP
                                        Jeremy A. Lieberman
                                        Murielle J. Steven Walsh
                                        600 Third Avenue
                                        New York, New York 10016

                                        *Attorneys for the Lead Plaintiffs and*
                                        *The Putative Class*